By the Court.
In the year 1760, John and Robert Brod-dus entered into partnership: To set this trade on foot, they having no correspondents in Britain, apply to the defendants residing in this country, who were factors for British merchants.
The interests of the firms originating with John M’Call & Co. centered in M’Call & Elliot.
John Broddus had a release, and was no more interested.
The terms o.f the original contract were 85 .per cent, on the prime cost of goods, with liberty to vary as the exchange varied, and payable in cash, or tobacco, at the market price.
Their dealings continued for nine years, during which Mr. Broddus was regularly informed of the price . of the goods he purchased; and tbok what he liked, and rejected the rest. Several 'settlements, too, were made, and finally this bond was executed.
*At some time during their dealings, Broddus discloses his suspicions, that the goods and tobacco were not fairly priced; and proposes an arbitration, which was rejected. The suit was commenced in August, 1772: in June, judgment was confessed, and an injunction granted.
The complainants state, that the average of advance on the goods was 25 per cent. The agreement is clearly proved; and any advance, on the prime cost of the goods to the British merchant in his ware-house before exportation, is a breach of that agreement. That there was such an advance, is plainly proved. The appellee, then, is clearly entitled to relief, if not barred by his. acquiescence under the imposition.
The first objection to granting him relief is, that he saw the goods, and was informed of the price, and might judge for himself.
But neither an invoice, or note of particulars, discovered to him, that the invoice, by which he purchased, was advanced. Even the agents in the store knew nothing of the amount of advance. Under the influence of this ignorance, he settles, and gives repeated bonds for the balance appearing on each settlement to be due. Ought those bonds, now that the imposition is discovered, to bar his relief against it?
It is a general principle, that bonds and other engagements derive their obligation from the consent of the mind of the contracting party. A suggestion of falsehood, or a suppression of truth, is such a vice in their composition, as to destroy their original obligation. Would be have given these bonds, had he known the fraud which had *601 been practised on him? His conduct, subsequent to the discovery of that fraud, shews he would not. In the case of Bosanquett v. Dashwood, Cas. Temp. Talb. 38, Dord Talbot asks, “Must a man keep *money that he has no right to merely because he got it into his hands?” So it may be asked here, Must he recover money, merely because he has a bond.
The cases of Cole v. Gibbons, [3 P. Wms. 294,] and Chesterfield et al. ex’rs of Spencer v. Janssen, [2 Ves. sen. 125, 1 Atk. 354,] have been relied on.
In that of Cole v. Gibbons, any objection, which might lie to the original deed, was totally done away by the second, when the fact was fully disclosed to him; and, with a perfect knowledge of it, he executed the deed.
In that of Chesterfield et al. ex’rs v. Janssen, there was no fraud or imposition in the original contract. It was a fair contingent contract, without deception ; and the risk was perfectly equal. But, be this as it may, the original objection (the distress of Mr. Spencer) was removed, when he confirmed it. The principle of these cases is clearly right; but it does not apply to this case. ‘ Broddus was deceived throughout the whole transaction; and, if he had given fifty bonds under the same deception, his title to relief would have remained undiminished. The Court' is of opinion, that he is entitled to relief.
The County Court has charged 25 per cent., under the idea that that was the just average of advance on the goods. It is alleged, in the bill, that the goods were advanced so as to average 25 per cent. ; and the answer admits an advance, but does not say what that advance was. This is urged by the counsel, with some weight, as* a confession of the advance charged in the bill; but, the Court being about to relieve a man against his bond, will not be rigid. The deposition of Mr. Pollard states, that the goods were, in his opinion, advanced from 15 to 20 per cent. The Court incline to take the mesne advance of V7]4, Per cent., as the just average, and the decree to be as follows:
*'The Court is of opinion, “that there is error, in the decree of the High Court of Chancery in this, that the injunction was dissolved as to all but the payments stated, and an account directed to be taken, in which no deduction was to be made for the average advance in the price charged as the first cost of the goods;.this Court being of opinion, that in taking such account, a deduction ought to be made for such average advance at 17]4 per cent, instead of 25 per cent, in the mode pursued by the auditors; whose account ought to stand in all other particulars, except a change of the deduction from 25 per cent, to 17J4 per cent, as , aforesaid, and of the consequent calculations of advance and interest thereon.”*
Note. It appeared to the Court from the inspection of the account and other testimony in the cause, that the average advance on the prjme cost of the goods, was 17]^ and not 25 per cent.